UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARLON T. YOUNG,
    Plaintiff,

  v.                Case No. 19-cv-1352-bhl

SANDRA MCARDLE,
    Defendant.

---

## DECISION AND ORDER

---

In this lawsuit, plaintiff Marlon T. Young alleges that defendant Sandra McArdle was deliberately indifferent towards his serious medical condition by refusing to see him for his leg pain on March 22, 2019, denying him a walking aid until she could see him later in the week, then changing the date of his medical appointment from March 26, 2019 to April 15, 2019. *See* Dkt. No. 1; *see also* Dkt. No. 10 at 4-5. Defendant filed a motion for summary judgment on September 18, 2020. Dkt. No. 34. After briefing was completed, Young filed a "motion to clarify" on April 5, 2021, questioning the outcomes of several of his earlier requests for relief. Dkt. No. 57. The Court now grants Young's latest motion by clarifying the status of Young's prior request. The Court also grants Defendant's motion for summary judgment and dismisses the case.

## MOTION TO CLARIFY

In his April 5, 2021 motion to clarify, Young states that he "never received [an] answer" to various requests and motions he filed in this case. Dkt. No. 57. The Court will grant Young's request for clarification and, in this Decision and Order, will explain the outcome of his various motions and requests.

First, Young states that he filed a motion to appoint counsel on December 10, 2019. *Id*., ¶2. The Court denied that motion on January 3, 2020 because Young did not provide any specific information on why the difficulty of the case exceeded his individual capacity to coherently litigate it. *See* Dkt. No. 16. The Court concluded that Young's incarceration, on its own, was not enough to receive *pro bono* counsel. *Id*.

Next, Young states that, on August 11, 2020, he filed a letter asking that inmate Anthony Heard, who was apparently assisting Young with his lawsuit, be allowed to be present during his deposition. Dkt. No. 57, ¶1. Because Heard is not licensed to practice law, he is not entitled to appear for Young in this lawsuit, including at Young's deposition. While an order specifically denying that request was unfortunately never entered, that failure has had no impact on the case. Regardless of whether Young received an order confirming this result, the deposition proceeded as it would have. Moreover, neither party cited the deposition transcript in connection with the pending summary judgment motion.

Finally, Young states that, on or around October 5, 2020, he filed motions asking to resubmit his summary judgment response materials to correct certain errors. *Id*., ¶3. The Court issued orders granting those motions on October 15, 2020 and October 23, 2020 and agreed to consider Young's later submissions in deciding summary judgment. *See* Dkt. Nos. 48 and 52. Those later submissions have been considered in connection with the Court's summary judgment ruling as set forth below.

**FACTUAL BACKGROUND**

Young is an inmate at the Wisconsin Secure Program Facility. Dkt. No. 36, ¶1. McArdle is a nurse who provided medical care at WSPF. *Id*., ¶2.

On March 22, 2019, Young felt a "pop" in his right leg which caused pain. *Id*., ¶5. He submitted a "blue slip" requesting emergency medical care from the Health Services Unit (HSU). Dkt. No. 38-1 at 3-4. Registered Nurse (RN) Wehrle and RN Lee (neither of whom are defendants in this case) went to Young's cell to evaluate him that same day. *Id*. at 6-7. They arrived at his cell at about 1:30 p.m. *Id*. at 6. RN Wehrle examined Young, consulted with McArdle, and provided an Ace wrap and pain medication for his leg. *Id*. RN Wehrle offered to apply the Ace Wrap to his knee but Young complained that it was his leg, not his knee, that was in pain. *Id*. RN Wehrle then contacted McArdle again, and McArdle recommended an extra pillow for comfort and support. *Id*. RN Lee also spoke to Young at his cell at that time and encouraged him to take his pain medication. *Id*. at 6-7. RN Lee told Young that McArdle would see him the following week, on March 26, 2019. *Id*. at 6-7. McArdle was not present during the cell side evaluation on March 22, 2019, but she approved use of an Ace Wrap, pain medication, and an extra pillow. Dkt. No. 36, ¶25. At around 8:00 a.m. on March 26, 2019, McArdle cancelled Young's scheduled appointment and rescheduled it for April 15, 2019, writing "patient was seen for the same complaint on 3/15/21." Dkt. No. 38-1 at 15.

About a week later on March 31, 2019, Young filed Inmate Complaint WSPF-2019-6061 through the Inmate Complaint Review System (ICRS) regarding the March 22, 2019 incident. Dkt. No. 36, ¶9. This was the only inmate complaint he filed about the incident. *Id*., ¶16. Young stated that several correctional officers did not set up his medical evaluation quickly enough given that it was an "emergency" situation. Dkt. No. 38-1 at 3-4. He also stated that he only received an Ace bandage and pain medication for his leg, rather than receiving a walker, cane, or wheelchair. *Id*.

The Institution Complaint Examiner (ICE) recommended affirming the inmate complaint, but for a reason that was not raised in the inmate complaint. Dkt. No. 38-1 at 6-7. ICE wrote,

> "Based on the information above, this examiner recommends this complaint be affirmed. Inmate Young was informed on 3/22/19 per the provider recommendation he would see her for follow-up next-week and the 3/26/19 appointment was cancelled by the provider."

*Id*. at 7. The Reviewing Authority (RA) adopted the recommendation and affirmed the inmate complaint but again noted a different reason, "medical contact should not be done cell side." *Id*. at 8. Young appealed the RA's decision and stated, "even though my complaint was affirmed, I have still not been provided with any sort of mobility aid or effective pain meds." Dkt. No. 38-1 at 9. The Correctional Complaint Examiner (CCE) recommended affirming the RA's decision but also apparently concluded that "the inmate raised new issues that are outside the scope of the original complaint and will not be addressed by this examiner." *Id*. at 18. The Office of the Secretary (OOS) accepted CCE's recommendation and affirmed the inmate complaint. *Id*. at 22.

On April 15, 2019, McArdle saw Young for his rescheduled medical appointment. Dkt. No. 36, ¶17. Young arrived at the appointment without a mobility aid. *Id*., ¶18. At the appointment, McArdle attempted to conduct range-of-motion exercises to evaluate his mobility, but Young refused. *Id*., ¶19. McArdle extended the existing order for pain medication, ice, and extra pillows. *Id*., ¶20. She gave him Capcasin cream and gave him information on use and dosage of the medication. *Id*. She further recommended a warm, moist compress for 20 to 30 minutes followed by easy range-of-motion exercises. *Id*. She also entered an order for evaluation and treatment by physical therapy. *Id*.

On June 5, 2019, Young was evaluated again and received x-rays. *Id*., ¶21. The x-rays showed no fractures or dislocation. *Id*. The x-rays showed mild osteoarthritis of the right hip. *Id*.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Defendant claims she is entitled to summary judgment for two reasons. First, she contends Young failed to exhaust administrative remedies with respect to his claim that she cancelled and delayed his March 26, 2019 medical appointment. *See* Dkt. No. 35 at 3-8. Second, she argues she was not deliberately indifferent with respect to his requests for walking aids or any other medical care she provided for his painful leg. *Id*. at 8-14.

a. **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020) (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006), and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

But prisoners are only required to exhaust those administrative remedies that are "available" to them. *See* 42 U.S.C. § 1997e(a). Administrative remedies are "unavailable" where prison officials "do not respond to a properly filed grievance." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Unavailability extends beyond affirmative misconduct to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citing *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006), and *King v. McCarty,* 781 F.3d 889, 896 (7th Cir. 2015)). Exhaustion is an affirmative defense and the burden of proof is on the defendant. *Dole,* 438 F.3d at 809; *see also Davis v. Mason*, 881 F.3d 982 (7th Cir. 2018).

Wisconsin has established the Inmate Complaint Review System (ICRS) to review inmate grievances. Wis. Admin. Code § DOC 310.05. Inmates must file an inmate complaint with the Institution Complaint Examiner ("ICE") within 14 days of the relevant occurrence. Wis. Admin.

Code § DOC 310.07(2). "Each complaint may contain only one clearly identified issue." § DOC 310.07(5). "The ICE may return a complaint within 10 days if it does not meet the criteria under s. DOC 310.07 (1), (3), (4), and (5) to permit the inmate to resubmit the complaint after correcting issues noted by the ICE." *See* § DOC 310.10(5). The inmate must then appeal his inmate complaint through the proper channels all the way to the Office of the Secretary of the Department of Corrections. § DOC 310.13.

Defendant states that Young failed to exhaust administrative remedies with respect to his claim that she cancelled and delayed his March 26, 2019 medical appointment. She states that Inmate Complaint WSPF-2019-6061, the only inmate complaint Young filed regarding the claims in this lawsuit, never raised this particular issue. The defendant further argues that, to the extent ICE *sua sponte* raised that issue in its recommendation, CCE "rejected" ICE's reasoning and affirmed RA's decision only to the extent that medical care should not have occurred cell side. Dkt. No. 53 at 3-5.

Young's original inmate complaint raised two specific issues: (1) that correctional officers did not set up his medical evaluation quickly enough given that it was an "emergency" situation; and (2) that medical staff only gave him an Ace bandage and pain medication for his leg, rather than providing a walker, cane, or wheelchair. The original inmate complaint does not mention the cancelled and delayed medical appointment from March 26, 2019; therefore, the Court agrees that Inmate Complaint WSPF-2019-6061 did not specifically raise that issue.

But given the muddled and confusing exhaustion record, Young would not have known to file a separate inmate complaint for the delay and cancellation of his March 26, 2019 medical appointment. *See e.g. Swisher v. Porter Cty. Sheriff's Dep't,* 769 F.3d 553, 555 (7th Cir. 2014) (excusing a plaintiff's failure to properly exhaust administrative remedies due to "a muddle created

by the people running the jail"). Rather than addressing the specific issues raised in the original inmate complaint, the institution raised and resolved a different issue at each stage of the grievance process. ICE initially recommended affirming the inmate complaint because "Inmate Young was informed on 3/22/19 per the provider recommendation he would see her for follow-up next-week and the 3/26/19 appointment was cancelled by the provider." RA then adopted ICE's recommendation and affirmed the inmate complaint but again noted a different reason, "medical contact should not be done cell side." Given that the DOC's grievance procedure outlined in ch. 310 does not explain what an inmate is supposed to do when his inmate complaint is "affirmed" for a reason not identified in the inmate complaint, Young would not have known to file a separate inmate complaint for the delay and cancellation of his March 26, 2019 medical appointment. To the extent the institution believed that Young identified too many issues in the original inmate complaint, the institution should have "returned" that inmate complaint with instructions on how to correct the issues, as specifically outlined in § DOC 310.10(5). The institution failed to follow its own grievance procedures as outlined in § DOC 310.10(5), then it failed to inform Young of how to complete the grievance procedure in light of their decision to deviate from it, so Young cannot be held responsible for his purported failure to comply with the institution's elusive grievance process.

The Court notes that the institution never actually addressed the issue Young did raise in this inmate complaint—his request for mobility aid and/or effective pain medication. Young attempted to re-raise the issue in his appeal stating, "even though my complaint was affirmed, I have still not been provided with any sort of mobility aid or effective pain meds," but CCE apparently concluded that this was a "new" issue that was "outside the scope of the original

complaint." Young therefore also could not exhaust administrative remedies for a different reason: prison officials failed to respond to his grievance.

In short, Young cannot be penalized for the institution's failure to address issues brought to its attention (twice) through the grievance process nor can he be penalized for its decision to raise then reject new issues that were not identified in the original inmate complaint. The institution unnecessarily created confusion and muddled the exhaustion record by failing to follow its own grievance procedure; and therefore, Young would not have known the proper steps to complete the exhaustion process. Exhaustion is an affirmative defense, and based on the record before the Court, the defendant has not met her burden to show that Young failed to exhaust all available administrative remedies.

### b. Eighth Amendment Deliberate Indifference

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Young must provide evidence from which a reasonable jury could conclude that the defendant: (1) knew of an objectively serious medical condition; and (2) was deliberately indifferent towards that medical condition. *Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016). The first, objective, element is satisfied by showing that Young suffered from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). Substantial and prolonged pain is an objectively serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The second, subjective, element is satisfied by showing that a prison official "knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Arnett v. Webster,* 658 F.3d 742, 751

(7th Cir. 2011)).  This is a "high hurdle."  *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). It requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).  The Court examines the totality of an inmate's medical care when analyzing deliberate indifference.  *See Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018); *see also Gutierrez*, 111 F.3d at 1375.

Defendant argues that Young did not suffer from an objectively serious medical need.  *See* Dkt. No. 35 at 9-11.  She contends that Young's description of his injury is inaccurate because he did not file "additional Health Service Requests" between March 22, 2019 and April 15, 2019; he only filed one medical request (the "blue slip") on March 22, 2021.  *Id*. at 9.  She also highlights a one-day discrepancy in the relevant dates in this case; Young identified the date of injury in his proposed findings of fact as March 22, 2019 but his inmate complaint states that the date of injury was March 21, 2019.  *Id*. at 10.  Finally, she insists that Young did not have any fractures or dislocation; he only had mild osteoarthritis.  *Id*. at 10-11.

Most of Defendant's arguments are misplaced.  Young need not be diagnosed with a fracture or dislocation to have an objectively serious medical condition; substantial and prolonged pain, on its own, is an objectively serious medical need.  *See Gutierrez v. Peters*, 111 F.3d at 1375. Regarding that point, Young states that he was in substantial pain from his injury and he could not walk properly for weeks.  The credibility of Young's description of his injury is a question of fact for the jury that the Court cannot resolve at summary judgment.  Young also did not need to file multiple Health Service Requests to prove that he was in pain.  And a one-day discrepancy in the date of injury hardly undermines the description of his injury.  Young has provided enough evidence from which a reasonable jury could conclude that he had an objectively serious medical condition.

Defendant is on more solid footing, however, in arguing that the record will not support a finding that she showed deliberate indifference to his medical condition. Young states that McArdle refused to see him for his leg pain on March 22, 2019, denied him a walking aid until she could see him later in the week, then changed the date of his medical appointment from March 26, 2019 to April 15, 2019. The Court agrees that none of these complaints rises to a level sufficient for a jury to find deliberate indifference.

Young's first assertion, that McArdle refused to see him on March 22, 2019, mischaracterizes the medical care he received that day. While McArdle did not personally go to Young's cell on March 22, 2019 to examine him herself, she sent two other nurses to examine him. These individuals consulted with McArdle and provided him with an Ace Wrap, pain medication, and an extra pillow. Although Young may have preferred for McArdle to examine him personally that day, he does not have a constitutional right to demand medical care from a specific individual. *See Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) ("In any event, a prison official's refusal to indulge an inmate's request to see a specific staff member, when the prisoner is receiving care from other members of the medical staff, is not deliberate indifference.")

Young's second assertion, that McArdle did not give him walking aids, also does not rise to the level of deliberate indifference. Young does not have a constitutional right to demand specific medical care. *See Walker v. Wexford Health Sources, Inc.,* 940 F.3d 954, 965 (7th Cir. 2019) (quoting *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011))( "[A]n inmate is not entitled to demand specific care.") The nurses that examined him that day used their medical judgment to determine that an Ace Wrap, pain medication, and an extra pillow were adequate to treat his leg pain at that time. Young's disagreement about the proper course of treatment is insufficient to overcome summary judgment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Finally, Young's third assertion, that McArdle delayed medical care by two weeks by cancelling his appointment scheduled for March 26, 2019 and rescheduling it for April 15, 2019, also does not support a finding of a constitutional violation. With respect to the pain he suffered during that two-week period of time, Young had pain medication, an Ace Wrap, and extra pillows throughout that period of time. And as noted above, Young cannot demand stronger pain medication or demand generally different treatment for his pain. To the extent Young argues that McArdle persisted in a course of treatment that was ineffective during that two-week period of time, two weeks is a reasonable amount of time to wait and see if a course of treatment is effective. As the Seventh Circuit has explained, "[i]t would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Given that Young did not have a fracture or dislocation, two weeks was a reasonable amount of time to wait and see if the prescribed treatment plan was effective to resolve his complaints of pain.

With respect to his diagnosis of mild osteoarthritis, there is no medical evidence that the two-week delay in setting up a medical appointment caused or exacerbated this condition. Indeed, "where the plaintiff alleges the defendant delayed, rather than denied, medical treatment—[the Seventh Circuit] [has] required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). Young has not come forward with evidence satisfying this criteria.

Finally, the Court notes that negligence is not enough to give rise to a constitutional violation. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (holding that "even admitted medical malpractice does not give rise to a constitutional violation"). While McArdle may have

incorrectly concluded that Young's March 15, 2019 appointment (which involved leg pain) was the "same issue" as his March 22, 2019 complaint (which also involved leg pain but was caused by a different incident), this error amounts to negligence (at best), not deliberate indifference. Nothing in the record shows that McArdle showed total unconcern for Young's welfare in the face of serious risks. To the contrary, Young received adequate medical care for his painful leg. Based on the undisputed evidence, and the totality of the medical care Young received for his leg, no reasonable jury could conclude that McArdle was deliberately indifferent towards Young's medical condition. The Court will grant the motion for summary judgment and dismiss this case.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** the plaintiff's motion to clarify (Dkt. No. 57) is **GRANTED**; the defendant's motion for summary judgment (Dkt. No. 34) is **GRANTED**; and this case is **DISMISSED**. The clerk's office is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of June, 2021.

s/ *Brett H. Ludwig*  
Brett H. Ludwig  
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.